UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SUSAN A. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:14-01688 |
| v. ) | Judge Nixon/Brown |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**To: The Honorable John T. Nixon, Senior United States District Judge.**

## REPORT AND RECOMMENDATION

This action was brought under 42 U.S.C. §§ 405(g) and 1383(c) for judicial review of the final decision of the Social Security Administration ("the SSA"), through its Commissioner ("the Commissioner"), denying plaintiff's applications for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. The undersigned **RECOMMENDS** for the reasons explained below that plaintiff's motion for judgment on the administrative record (Doc. 18) be **GRANTED**, the judgment below **REVERSED**, and this action **REMANDED** for further administrative proceedings.

### I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI on March 2, 2011 (Doc. 14, p. 145), alleging a disability onset date of July 17, 2008 (Doc. 14, p. 145).[1] Plaintiff claimed she was unable to work because of back pain, chronic obstructive pulmonary disease (COPD), bipolar disorder, psychosis, agoraphobia, panic attacks, bulging nerves, and osteoporosis. (Doc. 14, pp. 83-84, 149) Plaintiff's

---

[1] References to page numbers in the Administrative Record (Doc. 14) are to the page numbers that appear in **bold** in the lower right corner of each page.

application for benefits was denied initially on June 30, 2011, and upon reconsideration on November 16, 2011. (Doc. 14, pp. 80-87, 97-99)

On November 21, 2011, plaintiff requested a hearing before an administrative law judge (ALJ). (Doc. 14, pp. 100-03, 108-09, 111-15) A hearing was held in Nashville on February 7, 2013 before ALJ Michelle Thompson. (Doc. 14, pp. 36-65) Vocational expert (VE) Melissa Neel testified at the hearing. (Doc. 14, p. 36) Plaintiff was represented at the hearing by Carl Groves, Jr., a non-attorney representative. (Doc. 14, pp. 36, 89-93)

The ALJ entered an unfavorable decision on March 26, 2013. (Doc. 14, pp. 14-31) Plaintiff filed a request with the Appeals Council on May 22, 2013 to review the ALJ's decision. (Doc. 14, 9-10) The Appeals Council denied plaintiff's request on June 23, 2014, whereupon the ALJ's decision became the final decision of the Commissioner. (Doc. 14, 2-8)

Plaintiff brought this action through counsel on August 18, 2014. (Doc. 1) Plaintiff filed a motion for judgment on the administrative record on December 29, 2014 (Doc. 18), the Commissioner responded on February 24, 2015 (Doc. 22), and plaintiff replied on March 5, 2015 (Doc. 23). This matter is now properly before the court.

## II. REVIEW OF THE RECORD[2]

### A. Medical Evidence

The medical evidence of record shows that Dr. Willard West, M.D., treated plaintiff from March 2010 to May 2012. (Doc. 14, pp. 189-98, 282-83, 289-90, 291-309) Plaintiff presented first on March 19, 2010 for wheezing, neck pain, and a productive cough, with symptoms of asthma and

---

[2] The excerpts of the medical evidence of record and transcript of the hearing addressed below are limited to those necessary to support the court's analysis of plaintiff's claims of error. The remainder of the medical evidence of record and the transcript of the hearing is incorporated herein by reference.

dyspnea[3] on exertion; on April 16, 2010 for lower back pain, neck pain, and headaches, plus symptoms of asthma; and on May 14, 2010 for upper back pain, with additional symptoms of asthma and a cough. (Doc. 14, pp. 193-98)

Doctor Roy Johnson, M.D., examined plaintiff consultively on May 31, 2011. (Doc. 14, pp. 250-53) Doctor Johnson noted the following: "Lung fields clear to ausculation.[4] No wheeze, rhonchi,[5] or rales[6] noted." (Doc. 14, p. 251)

Doctor Nathaniel Briggs, M.D., examined plaintiff consultively on June 25, 2011. (Doc. 14, pp. 272-76) Doctor Briggs noted that plaintiff was "not observed to have any SOB[7] and her lungs were CTA[8] w/no wheezes, rhonchi or rales." (Doc. 14, p. 275)

Doctor West *signed* a medical source statement for breathing disorders on October 4, 2011. (Doc. 282-83) Relying on an October 12, 2011 pulmonary function test (PFT)[9] (Doc. 14, p. 282), Dr. West determined that plaintiff had moderate COPD and could: 1) stand only 15 mins. at one time; 2) sit only 20 mins. at one time; 3) lift 5 lbs. only occasionally; 4) lift 5 lbs. frequently; 5) never be exposed to dust, smoke, and/or fumes; 6) expect to be absent from work 4 or more days per

---

[3] Dyspnea – "breathlessness or shortness of breath; difficult or labored respiration." *Dorland's Illustrated Medical Dictionary* 582 (32nd ed. 2012).

[4] Ausculation – "the act of listening for sounds within the body, chiefly for ascertaining the condition of the lungs, heart, pleura, abdomen and other organs . . . ." *Dorland's* at 180.

[5] Rhonchus – "continuous sound . . . consisting of a dry, low-pitched, snore-like noise, produced in the throat or bronchial tube due to a partial obstruction . . . ." *Dorland's* at 1642.

[6] Rale – "a discontinuous sound . . . consisting of a series of short nonmusical notes, heard primarily during inhalation; called also *crackle*." *Dorland's* at 1576 (italics in the original).

[7] SOB – "shortness of breath." *Dorland's* at 2123.

[8] CTA – "clear to ausculation."

[9] There is an obvious disparity in the dates. Doctor West signed the medical source statement on October 4, 2011; however, the PFT report shows that the test was not conducted until 8 days later on October 12, 2011.

month. (Doc. 14, p. 283) The report of the PFT reflects the following two points relevant to the matter before the court: a $FEV_1$[10] of 1.0, which is noted with an asterisk as being below the lower limits of normal, and a height of 62 in.

Doctor Johnson examined plaintiff consultively again on October 24, 2011. (Doc. 14, pp. 284-87) Doctor Johnson again noted: "Lung fields are clear to ausculation. No wheezing, rhonchi, or rales noted." (Doc. 14, p. 285)

Doctor West's medical records show that plaintiff presented for treatment on October 25, 2011 with no specific complaints, but also with no cough or shortness of breath, and her lungs were clear with no wheezes, rales, or rhonchi; on November 23, 2011 for chronic pain, asthma, and headaches, but with no cough or shortness of breath; on December 21, 2011 for headaches, asthma, and chronic pain, but with no cough or shortness of breath, and her lungs were clear, with no wheezes, rales or rhonchi; on January 12, 2012 for chronic low blood pressure, asthma, and headaches, and her lungs clear with no wheezes, rales, or rhonchi; on December 21, 2011 for headaches, asthma, and chronic pain, but with no cough or shortness of breath, and her lungs were clear with no wheezes, rales, or rhonchi; on January 18, 2012 for chronic low blood pressure, asthma, and headaches, but with no cough or shortness of breath, and her lungs were clear with no wheezes, rales, or rhonchi; on February 14, 2012 for chronic pain, asthma, nasal drainage and cough, but her lungs were clear with no wheezes rales, or rhonchi; March 12, 2012 for chronic pain and asthma, nasal drainage and a cough; on April 9, 2012 for a runny nose, watery eyes, and a productive cough, and her lungs were clear with no wheezes, rales, or rhonchi; and May 16, 2012 for depression and muscle pain, exhibiting a productive cough. (Doc. 14, pp. 291-309)

---

[10] FEV – "forced expiratory volume." *Dorland's* at 2113. $FEV_1$ – the volume exhaled during the first second of a forced expiratory maneuver beginning from a level of total capacity.

4

Doctor West completed a second medical source statement on January 30, 2012 in which he noted that plaintiff: 1) could lift 5 lbs. occasionally; 2) was unable to lift any weight frequently; 3) had no ability to stand or walk during a workday or otherwise; 4) was unable to sit during a workday, but could sit 15 mins. at one time; 5) was capable of frequent gross and fine manipulation with her hands; 6) could occasionally bend, balance, raise her arms above shoulder level, and tolerate exposure to noise; 7) could never stoop, work around dangerous equipment, tolerate heat, cold, or exposure to dust, smoke or fumes. (Doc. 14, p. 289) Doctor West concluded further that plaintiff: 8) would have to elevate her feet occasionally; 9) experienced pain frequently enough to interfere with attention and/or concentration; 10) suffered from severe fatigue. (Doc. 14, p. 290)

### B. Transcript of the Hearing

Plaintiff testified at the hearing that she had been diagnosed with COPD, that she used multiple prescribed inhalers, but that she still became short of breath two or three times a day when not moving, exerting herself, or by just sitting around. (Doc. 14, p. 43) Although plaintiff admitted she was a smoker, she testified that she had cut back from a pack a day to three cigarettes a day. (Doc. 14, p. 43) Plaintiff testified further that she could walk/be on her feet "a couple of minutes" before having to sit down, but then would have to rest for five minutes. (Doc. 14, pp. 43-44)

### C. The ALJ's Notice of Decision

Under the Act, a claimant is entitled to disability benefits if she can show her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.905. Corresponding regulations outline the five-step sequential process to determine whether an individual is "disabled" within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374-75 (6th Cir. 2014). While the claimant bears the burden of proof at steps one through four, the burden shifts to the Commissioner at step five to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (RFC) and vocational profile. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

## III. ANALYSIS

### A. Standard of Review

The district court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record, and whether the decision was made pursuant to proper legal standards. 42 U.S.C. § 405(g); *Gayheart*, 710 F.3d at 374. Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Gentry v. Comm's or Soc. Sec'y*, 741 F.3d 708, 722 (6th Cir. 2003). The Commissioner's decision must stand if substantial evidence supports the conclusion reached, even if the evidence also could support a different conclusion. *Gayheart*, 710 F.3d at 374. "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

### B. Claims of Error

Plaintiff sets forth several claims of error in her motion for judgment on the administrative record: 1) the ALJ erred in not awarding benefits at step three (Doc. 19, pp. 3-8); 2) the ALJ's evaluation of the medical evidence of record was "contrary to 20 CFR 416.927 and long-standing Sixth Circuit precedent" (Doc. 19, pp. 9-13); 3) the ALJ failed to provide "good/specific/supported"

reasons for rejecting the medical opinions of her treating physician (Doc. 19, pp. 14-18). Plaintiff's first claim of error is dispositive; therefore, the Magistrate Judge need not address the other two.

Plaintiff argues that, based on the findings in the PFT, *i.e.*, a $FEV_1$ of 1.00 and plaintiff's height of 62 in., she was presumptively qualified for benefits under listing 3.02A. (Doc. 19, pp. 3-9) Defendant argues in response that the PFT was not performed/reported using the testing protocols in listing 3.00E. (Doc. 22, pp. 4-7) More particularly, defendant argues that the PFT was invalid under listing 3.00E because only a single satisfactory expiratory maneuver was performed, where a minimum of three are required, and that the test was not repeated after the administration of an aerosolized bronchodilator, both of which are specified under listing 3.00E.[11] (Doc. 22, pp. 4-7) Defendant also maintains that the ALJ "properly considered the record as a whole in evaluating whether Listing 3.02A was met." (Doc. 22, pp. 6-7)

Plaintiff argues in reply that the ALJ determined the results of the PFT met the requirements of listing 3.02. (Doc. 23, p. 2) Plaintiff also argues that the court "must presume" that the ALJ did not find fault with the manner in which the PFT was performed. (Doc. 23, p. 2) Finally, plaintiff argues that the "the ALJ's decision may not be affirmed on the basis that [it] does not appear in the decision itself but rather appears for the first time in [the] SSA's brief to the court." (Doc. 23, p. 3)

---

[11] Defendant relies on the PFT report entry, "QC Grade D," to support his argument that only a single satisfactory forced expiratory maneuver was performed. Citing the *National Lung Health Education Program* website, http://www.nlhep.org/Documents/Office_Spirometry_for_Lung_Health_Assessment.html, plaintiff asserts that is what "QC Grade D" means. Assuming without deciding that this website is a reliable source of such information, Table 4 – Recommended Automated Maneuver QC Checks, Messages, and Grades on that website provides that a "QC Grade D" means: "only one acceptable maneuver, or more than one, but the FEV1 values match > 200 mL (with no interpretation)." Although "QC Grade D" could mean something other than "only one acceptable maneuver," the expression can mean something else. That said, the entry "MANEUVER NO.: 1/5" in the PFT report strongly suggests that five maneuvers actually were performed during the PFT, but only the results of the first maneuver was included in the medical record for reasons that are unclear. Because the PFT report does not report the number of maneuvers specified in listing 3.00E, the report does not satisfy the requirements of listing 3.00E. Defendant's assertion that subsequent maneuvers were not performed after the administration of an aerosolized bronchodilator also is supported by the absence of any entry on the PFT report to that effect. Failure to administer an aerosolized bronchodialator also would invalidate the PFT for purposes of assessing COPD under listing 3.02A.

7

To meet or medically equal a listing, all the criteria of the listing must be established in the medical evidence, or fairly represented by comparable, documented findings of medical severity. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 CFR § 404.1525(c)(3). A claimant must satisfy all of the criteria to satisfy the listing. 20 CFR § 404.1525(c)(3); *see Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). "[A] claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers*, 582 F.3d at 653.

Listing 3.02A – at issue here – pertains to COPD "due to any cause, with $FEV_1$ equal to or less than the values specified in table I corresponding to the person's height without shoes . . . ." Table I specifies a $FEV_1$ equal to or less than 1.15 for someone plaintiff's height, *i.e.*, 62 inches. The PFT report shows that plaintiff's $FEV_1$ was 1.00, and that she was 62 in. tall. These findings show that plaintiff satisfied listing 3.02A – at least those requirements set forth in Table I. As shown below; however, there also are specific testing protocols that must be satisfied before a claimant is presumptively entitled to benefits under listing 3.02A.

Where disability is alleged under listing 3.02A, PFTs are performed under the criteria in listing 3.00E. *See Thacker v. Social Sec. Admin.*, 93 Fed.Appx. 725, 728 (6th Cir. 2004). The following protocols are included in listing 3.00E to establish disability under listing 3.02A: 1) the reported forced respiratory maneuver "should represent the largest of at least three satisfactory forced expiratory maneuvers"; 2) "[s]pirometry should be repeated after administration of an aerosolized bronchodilator." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00E. Listing 3.00E also provides that "[p]ulmonary function studies performed to assess airflow obstruction without testing after bronchodilators **cannot be used to assess levels of impairment** in the range that prevents any gainful work activity . . . ." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00E

8

(emphasis added); *see Thacker*, 93 Fed.Appx. at 728.

If the PFT at issue was conducted in accordance with the provisions of listing 3.00E, then plaintiff is entitled to benefits under listing 3.02A. If the PFT at issue was not conducted in accordance with listing 3.00E, as defendant argues, then she is not. Plaintiff does not argue in the brief in support of her motion that the PFT was conducted in accordance with listing 3.00E, nor does she do so in her reply to defendant's response that it was not.

The ALJ's reasoning on this point cannot be determined from the record. The ALJ's decision is silent on this matter at step three (Doc. 14, p. 17) and, although the ALJ made the following statement in the RFC analysis: "An FEV1 of 1.00 would indicate a listing-level respiratory impairment; however, **based on the totality of the evidence, this value is found to be unreliable**" (Doc. 14, p. 24)(emphasis added), it cannot be determined from the decision why the ALJ was of the opinion that the "value [wa]s . . . unreliable," *e.g.*, whether the "totality" of *all* the medical evidence of record did not support this one-time objective test result that appears out of place with the rest of the record, or because the circumstances reflected in the PFT report, as pointed out by defendant, did not conform to the requirements of listing 3:00E, thereby invalidating the results for purposes of assessing listing 3.02A.

Notwithstanding plaintiff's argument to the contrary, the court is not required to "presume" that the ALJ determined the PFT was valid under listing 3.00E, especially where – as noted above at p. 7 n. 11 – the reported results of the PFT do not support such a presumption. Indeed, considering the entire medical evidence of record, the Magistrate Judge has no difficulty concluding that substantial evidence exists to support the ALJ's conclusion that plaintiff's alleged COPD was not disabling. However, because the court does not have the authority to correct the issue created by what appears to be a misstatement in the RFC analysis, the Magistrate Judge has no choice but

9

to recommend that plaintiff's motion for judgment on the administrative record be granted, the judgment below reversed, and this matter remanded for further administrative proceedings consistent with this report and recommendation (R&R).

## IV. RECOMMENDATION

The undersigned **RECOMMENDS** for the reasons explained above that plaintiff's motion for judgment on the administrative record (Doc. 18) be **GRANTED**, the judgment below **REVERSED**, and this matter **REMANDED** for further administrative proceedings. The parties have fourteen (14) days of being served with a copy of This R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to This R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of This R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** This 22nd day of October, 2015.

/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge